## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARTHUR SCHOTT, JR.,

       *Plaintiff,*

  v.

UPPER CHICHESTER TOWNSHIP and
UPPER CHICHESTER TOWNSHIP PFC
FRED C. RHODES, JR. #38,

       *Defendants.*

CIVIL ACTION
NO. 22-230

**PAPPERT, J.**                                    **August 16, 2022**

### MEMORANDUM

Arthur Schott Jr. alleges Upper Chichester Township Police Officer Fred Rhodes Jr. punched him in the face without provocation or justification. Schott sued Rhodes and the Township over the alleged assault, and Defendants separately moved to dismiss Schott's Amended Complaint.[1] The Court denies Rhodes's Motion and grants the Township's Motion in part and denies it in part.

I

On January 29, 2020, Schott was driving to his home in Boothwyn, Pennsylvania, when he ran a red light. (Am. Compl. ¶¶ 1, 5–6, ECF 10.) Rhodes followed Schott in his police car for forty-five seconds without turning on his siren or indicating he intended to pull Schott over. (*Id.* at ¶¶ 7, 9.) During that time, Schott drove his car legally and safely. (*Id.* at ¶ 8.)

---

[1]     The Township moved to dismiss Schott's initial Complaint. (ECF 1, 8.)  He then filed his Amended Complaint, and the Court denied the Township's motion as moot. (ECF 10, 11.)

After Schott pulled into his driveway, Rhodes turned on his siren.  (*Id.* at ¶ 10.)

Schott got out of his car and spoke with Rhodes in a relaxed, nonthreatening manner.

(*Id.* at ¶¶ 11–12.)  By contrast, Rhodes then ordered Schott in an aggressive tone to get

back into his car.  (*Id.* at ¶ 13.)  Schott told Rhodes he lived in the house.  (*Id.* at ¶ 14.)

Schott then leaned against his vehicle, crossed his legs and again attempted to speak

with Rhodes in a polite, calm manner.  (*Id.* at ¶¶ 15–16.)  Rhodes then sucker punched

Schott in the face, threw him to the ground, put his knee in his back and handcuffed

him.  (*Id.* at ¶¶ 18, 20.)  Schott sustained severe injuries, including a broken nose,

concussion and permanent scarring, and continues to suffer anxiety, among other

mental conditions.  (*Id.* at ¶¶ 23–25, 29.)[2]

Schott was subsequently arrested and charged with driving under the influence,

resisting arrest and failure to stop at a red light.  (*Id.* at ¶ 26.)  The charges were later

*nolle prossed*.  (*Id.* at ¶ 28.)

Schott asserts claims under 42 U.S.C. § 1983 for excessive force against Rhodes

(count one), a "Supplemental Claim" against Rhodes (count two) and for municipal

liability against the Township (count three).  Rhodes moved to dismiss count two, the

Township count three.  (ECF 12, 13.)

II

To avoid dismissal for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), a complaint must contain sufficient factual content to state a claim

that is facially "plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

---

[2]      Schott's Amended Complaint includes still images of the dash camera video footage from
Rhodes's police car.  (ECF 10 at 3–9.)  The Amended Complaint also contains a photo of Schott's face
showing his injuries.  (*Id.* at 10.)

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that a defendant is liable for the alleged misconduct.  *Id.*

Determining plausibility is a context-specific task requiring a court to use its judicial experience and common sense.  *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675).  The court disregards a complaint's legal conclusions, assumes well-pleaded facts—those supported by sufficient factual content to make them facially plausible—are true and then determines whether those facts plausibly entitle the pleader to relief.  *Id.*; *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  In doing so, the court construes well-pleaded facts in the light most favorable to the plaintiff and draws reasonable inferences from them.  *Connelly*, 809 F.3d at 790.

## III

## A

Schott titles count two as a "[s]upplemental" § 1983 claim against Rhodes.  (Am. Compl. 5.)  Within this count, Schott alleges, among other things, that Rhodes assaulted and battered him.  (*Id.* at ¶ 42.)  Schott subsequently clarified that count two is an assault and battery claim under Pennsylvania law.  (Pl's Resp. to Rhodes's Mot. to Dismiss 5–7, ECF 17.)

As an initial matter, though Rhodes argues otherwise, Schott's allegations comply with Federal Rule of Civil Procedure 8's requirements that he assert a short and plain statement of his claim showing he is entitled to relief and make simple, concise and direct allegations.  While the count is sloppily pleaded and its title is uninformative

if not misleading, the Court evaluates the pleading based on its substance, not its labels. *Garrett v. Wexford Health*, 938 F.3d 69, 81 n.17 (3d Cir. 2019).

A defendant commits assault when he intentionally attempts to injure another person by force and battery when the attempted injury actually occurs. *Minor v. Kraynak*, 155 A.3d 114, 117 n.2 (Pa. Commw. Ct. 2017); *see also Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Sup. Ct. 1994); *Friter v. Iolab Corp.*, 607 A.2d 1111, 1115 (Pa. Sup. Ct. 1992). Schott's detailed allegations describing his violent encounter with Rhodes plausibly establish Rhodes's liability for assault and battery. Indeed, Rhodes implicitly concedes as much by asserting Schott has adequately pleaded his excessive force claim. (Rhodes's Mot. to Dismiss 2, ECF 13.)[3]

B

Count three isn't exactly a model of clarity either. Despite his repeated references to "policy" and "custom," Schott appears to allege that Upper Chichester Township inadequately trained its officers by not requiring appropriate in-service training or re-training for those who engaged in misconduct. (Am. Compl. ¶ 50.) He also seemingly contends the Township inadequately supervised its officers by failing to root out a "blue code" of silence that prevented officers from intervening against or providing information about constitutional violations committed by fellow officers. (*Id.* at ¶ 51.)

---

[3]     Rhodes also moved to dismiss Schott's allegations of invasion of privacy, false light and denial of court access. (ECF 13 at 7–9.) The Court denies as moot this portion of Rhodes's Motion because the parties stipulated to the dismissal of these allegations. (Pl's Resp. to Rhodes's Mot. to Dismiss ¶¶ 1–2, ECF 17.)

Schott asserts the Township knowingly failed to enforce policies barring uses of unreasonable force and turned a blind eye to such conduct. (*Id.* at ¶ 47.) He further alleges the Township covered up and avoided detecting uses of excessive force by charging victims with crimes and failing to conduct internal investigations or discipline officers. (*Id.* at ¶¶ 48–49.) According to Schott, officers like Rhodes believed the Township would condone uses of excessive force, not investigate or punish them. (*Id.* at ¶ 55.)

1

A municipality is not subject to *respondeat superior* liability under § 1983 and must itself cause the alleged constitutional violation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). But it can be sued when an employee's execution of an official policy or custom causes the constitutional injury. *Monell*, 436 U.S. at 690, 694.

Municipalities can also face § 1983 liability for constitutional violations resulting from a failure to train, supervise or discipline police officers when it constitutes deliberate indifference to people's rights. *Harris*, 489 U.S. at 387–89; *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). This appears to be Schott's theory of the case.

Deliberate indifference is a stringent standard that requires proof a municipality disregarded a known or obvious consequence. *Bd. of Cnty. Commr's of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Specifically, a plaintiff must show (1) the municipality knows officers will encounter a specific situation, (2) the situation entails a difficult choice or employees have mishandled it and (3) an officer's wrong choice will frequently violate others' constitutional rights. *Estate of Roman v. City of Newark*, 914

5

F.3d 789, 798 (3d Cir. 2019).  The plaintiff need not demonstrate an unconstitutional policy or custom because the policy-or-custom and failure-or-inadequacy theories of liability are distinct.  *Forrest*, 930 F.3d at 105–06.

The municipality is not liable if the plaintiff shows only that officers could have been better trained, supervised or disciplined in general.  *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014).  Rather, the training, supervisory or disciplinary shortcoming must be closely related to and have caused the alleged constitutional violation.  *Harris*, 489 U.S. at 390–91.

A plaintiff asserting a failure-or-inadequacy claim typically must identify a pattern of similar constitutional violations to put municipal decisionmakers on notice that different training, supervision or discipline is necessary.  *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).  But a single incident is sufficient if the plaintiff shows the alleged failure to train, supervise or discipline would likely result in constitutional violations and the need to remedy it was so obvious it amounted to deliberate indifference.  *Id.*  The likelihood the particular situation will recur and predictability that an officer lacking appropriate training, supervision or discipline will violate others' constitutional rights may warrant finding that the failure to train, supervise or discipline amounted to deliberate indifference.  *See Brown*, 520 U.S. at 409.

2

To begin, for municipal liability to attach under § 1983, a municipality employee must have committed an underlying constitutional violation.  *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).  There is no dispute that Rhodes, an

Upper Chichester Township police officer, did so.  (Am. Compl. ¶ 3.)  Again, Rhodes

concedes Schott adequately pleaded his excessive force claim, and the City does not

argue Rhodes's conduct complied with the Fourth Amendment.

Again, Schott's allegations against the Township are all over the board.  As best

the Court can tell, he alleges it failed to train, supervise and discipline its officers,

including Rhodes.  *See* (Am. Compl. ¶¶ 45–57; Pl's Resp. to Township's Mot. to Dismiss

7–12, ECF 16).

Schott has not plausibly alleged a failure to train claim.  His general allegations

that the Township "inadequately . . . train[ed]" its officers are nothing more than

conclusory, bare-bones assertions.  *See* (Am. Compl. ¶¶ 50–51, 54); *Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Schott's further allegation that the

Township did not provide "appropriate in-service training or re-training" for officers

who engaged in "police misconduct" is also not facially plausible.  *See Burtch v. Milberg

Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  In particular, Schott fails to identify a

specific training failure and, as a consequence, cannot show how such a failure caused

Rhodes's alleged use of excessive force.  *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145

(3d Cir. 1997); *Harris*, 489 U.S. at 390–91.

In contrast, Schott has adequately pleaded failure to supervise and discipline

claims against the Township.  Specifically, he plausibly alleges these failures

constituted a disregard for the obvious consequence of Fourth Amendment violations

based on the use of excessive force.  *See Brown*, 520 U.S. at 409.  Schott claims the

Township knew its officers would make vehicle stops like his; that such stops involve

difficult choices like Rhodes's decision whether to use force against Schott and, if so,

how much; and that an officer's incorrect decision will violate others' constitutional rights, such as Rhodes's choice to allegedly use excessive force against Schott. *See Estate of Roman*, 914 F.3d at 798.

Schott has not plausibly alleged deliberate indifference based on a pattern of similar Fourth Amendment violations. *See Thomas*, 749 F.3d at 223–24. His bare allegations that the Township's officers have used excessive force in the past are nothing more than conclusory assertions. *See* (Am. Compl. ¶¶ 47, 49, 52–53); *Schuchardt*, 839 F.3d at 347. However, Schott has adequately pleaded deliberate indifference based on a single incident—namely, his. *See Johnson*, 975 F.3d at 403. The Township knew to a "moral certainty" its officers would make vehicle stops, like this one, where they may need to decide whether to use force. *See Harris*, 489 U.S. at 390 n.10. Consequently, Schott asserts the need to supervise and discipline these officers for their uses of excessive force was sufficiently obvious. *See Johnson*, 975 F.3d at 403; e.g., *Martínez v. City of Asbury Park*, No. 20-8710, 2021 WL 1343837, at *5–7 (D.N.J. Mar. 5, 2021); *see also Brown*, 520 U.S. at 409.[4]

Moreover, Schott has sufficiently pleaded a causal connection between the Township's failures to supervise and discipline and Rhodes's alleged violation of Schott's Fourth Amendment rights. Schott does not merely contend the Township's officers could have been better supervised and disciplined overall. See *Thomas*, 749 F.3d at 226. Rather, he asserts the Township's failure to supervise and discipline them

---

[4]      The Township argues the January 29, 2020 incident in itself "cannot form the basis of a *Monell* claim." (Township's Memo of Law in Supp. of Mot. to Dismiss 10, ECF 12-2.) But the Township ignores the caselaw establishing the single-incident theory for failure to train, supervise or discipline claims. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

with respect to the use of excessive force was closely related to Rhodes's alleged assault

of Schott.  *See Harris*, 489 U.S. at 390–91; *e.g.*, *Stewart v. Kinch*, No. 12-1509, 2012 WL

6645547, at *4–5 (E.D. Pa. Dec. 21, 2012).

Specifically, Schott alleges the Township permitted a code of silence that

prevented officers from intervening against or providing information about

constitutional violations (like uses of excessive force) committed by their colleagues.

(Am. Compl. ¶ 51); *see Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).  He

further contends the Township deliberately did not enforce policies forbidding uses of

excessive force and ignored such conduct.  (Am. Compl. ¶ 47); *see Beck v. City of

Pittsburgh*, 89 F.3d 966, 974 (3d Cir. 1996).  According to Schott, the Township failed to

investigate and covered up excessive-force incidents in part by charging victims with

crimes—such as the charges against Schott that were subsequently *nolle prossed*.  (Am.

Compl. ¶¶ 28, 48–49.)  As a result, Schott alleges, officers like Rhodes believed they

could use excessive force with abandon and without consequences.  (*Id*. at ¶ 55.)[5]

---

[5]      The Township primarily contends Schott failed to allege a specific policy or custom.
(Township's Mot. to Dismiss ¶¶ 27–32, ECF 12.)  This ignores the separate type of municipal liability
available for failure to train, supervise or discipline officers—which Schott has adequately pleaded,
though he too confuses things by couching his claims in alleged policies and customs.  *See Forrest v.
Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019).  Likewise, the Township incorrectly focuses on the policy-
or-custom theory when it relies on *Brower v. Corizon Health Services, Inc.*, in which the Court
dismissed a *pro se* inmate's claims that the City and its prison healthcare provider rendered
inadequate medical care in violation of the Eighth Amendment because he failed to allege a specific
custom that caused the alleged violation.  No. 15-5039, 2016 WL 5166330, *8–10 (E.D. Pa. Sept. 20,
2016); (Township's Memo of Law in Supp. of Mot. to Dismiss 8–9.)
         To the extent the Township argues Schott has not adequately pleaded a failure to train,
supervise or discipline, his allegations indicate otherwise.  *See Schuchardt v. President of the United
States*, 839 F.3d 336, 346–48 (3d Cir. 2016).  Indeed, Schott's failure-or-inadequacy claims are
nothing like the conclusory allegations the court dismissed in *Williams v. City of Harrisburg*, which
the Township also relies on.  No. 12-1566, 2013 WL 3784241, at *2–3 (M.D. Pa. July 18, 2013).

IV

A court should grant a plaintiff leave to amend his complaint when justice

requires it.  Fed. R. Civ. P. 15(a)(2).  It can deny leave only when amendment would be

futile or inequitable.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

Amendment would be futile if the amended complaint could not withstand a motion to

dismiss.  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  Schott may amend his

failure to train claim if he can do so consistent with this Memorandum.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.